**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| SUSAN GOSSETT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.:  7:24-CV-00067 (WLS) |
| | : | |
| JIUDICY INC d/b/a | : | |
| LABOR FINDERS, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**ORDER**

Defendant Jiudicy, Inc. d/b/a Labor Finders ("Defendant Jiudicy" or "Jiudicy") moves for summary judgment ("Motion") (Doc. 16) and requests oral argument. (Doc. 22). The Court finds the written briefing adequate and therefore **DENIES** the request for oral argument. After review, the Motion for Summary Judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.   **RELEVANT PROCEDURAL BACKGROUND**

Plaintiff filed this lawsuit in July 2024. The Complaint names Defendant Jiudicy, Inc. d/b/a Labor Finders. (Doc. 1). Plaintiff asserts claims under the Americans with Disabilities Act (ADA) for failure to accommodate, discrimination, and retaliation (Doc. 1 ¶¶ 30–59). Plaintiff also asserts claims under the Family and Medical Leave Act (FMLA) for interference and retaliation. (*Id.* ¶¶ 60–81). Plaintiff also filed a complaint with the Occupational Safety and Health Administration alleging retaliation by Defendant (Doc. 21-2 at 6, 8). And Defendant noted in its Motion for Summary Judgment that "[w]hile not pled in Plaintiff's Complaint, questions propounded of Defendant's representatives during discovery in this matter indicated that Plaintiff may attempt to make a claim against Defendant that she was terminated in retaliation for filing the OSHA Complaint." (Doc. 16-1 at 19). Indeed, there is no claim in Plaintiff's Complaint alleging retaliation for filing an OSHA complaint. (*See generally* Doc. 1). Plaintiff mentions her OSHA complaint at various points in the Complaint, (*see* Doc. 1 ¶¶ 22,

1

25 & Doc. 1 at 16–17), but does not allege a claim arising under OSHA. Therefore, no OSHA claim is before the Court, and it will not consider arguments made in Section G of Defendant's Motion. (Doc. 16-1 at 19).

## II.   STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). [1]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.

---

[1] Local Rule 56 requires the movant for summary judgment to attach to the motion a separate statement of the material facts about which the movant contends there is no genuine dispute. M.D. Ga. L.R. 56. The respondent shall attach to its response a separate statement of material facts to which respondent claims there exists a genuine dispute. *Id.* The respondent shall also respond to each of the movant's numbered material facts. Here, Jiudicy and Plaintiff both comply with Local Rule 56.

1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of an element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted). To avoid summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587–88; *Allen,* 121 F.3d at 646. Yet the Court must grant summary judgment if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.   FACTUAL BACKGROUND

Plaintiff worked for Defendant as an office assistant at its Gainesville location before she was promoted on May 1, 2023, and transferred to Defendant's Cumming office.[2] (Docs. 16-3 ¶¶ 1-2, Doc. 21-1 ¶ 1). Plaintiff worked in the Defendant's Cumming office for less than ten days. (Doc. 21-2 ¶ 3). Between May 9 and June 15, 2023, Plaintiff provided Defendant with four doctor's excuses and one work release excusing Plaintiff from work for the following

---

[2] If a fact is undisputed by Plaintiff, the Court relies on Jiudicy's Statement of Undisputed Material Facts (Doc. 16-3) for relevant propositions. If Plaintiff disputes a fact, the Court relies on Plaintiff's Responses and Objections to Defendant's Statement of Undisputed Material Facts. (Doc. 21-2). To fill in some details, the Court also relied on Plaintiff's Statement of Additional Material Facts. (Doc. 21-1).

periods: May 9–13, May 16–23, May 24–26, May 25–June 15, and June 15–22. (Docs. 16-3 ¶ 4 & 21-2 ¶ 4). None of these excuses contained an official diagnosis regarding Plaintiff's ailment or disability. (Doc. 21-2 ¶5). Neither the excuses nor the release amount to a Family and Medical Leave Act certification.[3] (Doc. 16-3 ¶ 6).

On May 23, 2023, Plaintiff requested that Defendant provide her with FMLA paperwork. (*Id.* ¶ 7). That same day, Defendant's Human Resources Manager, Marie Giudicy ("Ms. Giudicy") provided the required FMLA paperwork via email and told Plaintiff, "I am attaching the forms needed to start the FMLA process." (*Id.* ¶ 8). The paperwork contained two key pieces of information. First, the paperwork stated, "The employer must give the employee at least 15 calendar days to provide the certification. If the employee fails to provide complete and sufficient medical certification, his or her FMLA leave request may be denied." (Doc. 16-4 at 25). Second, in Section I of the paperwork, which "[e]ither the employee or the employer may complete" read "(3) The medical certification must be returned by" followed by a blank line which was not filled in. (*Id.*) In a smaller font beneath that blank, the paperwork read "(Must allow at least 15 calendar days from the date requested, unless it is not feasible despite the employee's diligent, good faith efforts.)" (*Id.*)

On June 6, 2023, Plaintiff emailed Defendant stating she had been diagnosed with eosinophilic asthma. (Doc. 16-3 ¶ 10). On June 8, 2023, 16 days after Plaintiff received the FMLA paperwork, Ms. Giudicy emailed Plaintiff asking "Do you have any sort of time frame on your absence. Will you be proceeding with the FMLA paperwork? Just trying to get some idea of your timeframe." (Doc. 18-2 at 45). Plaintiff replied, "Shooting for the 16th. That's what my Dr excuse [sic] says. My pulmonologist said he doesn't fill out FMLA paperwork." (*Id.*) Later that day, HR Assistant Erin Mancuso emailed Plaintiff stating:

> I know you are scheduled to come back to work on June 15th ,2023 [sic] and we would like to have you back, but if you cannot return and without the FMLA paperwork, we cannot continue to hold your position..[sic] Business continues and we need to have a full staff in all our locations to keep things moving smoothly. This is not to say that once you have fully recovered , [sic] we would welcome you back.

---

[3] A certification is issued by the medical provider of the employee. *See* 29 C.F.R. § 825.305

(Doc. 18-2 at 44). The next day, Plaintiff replied, "I will be returning to work on the 16th. I have a doctors appointment [sic] on the 15th and I will have a Dr excuse [sic] to cover that." (*Id.* at 43). During her deposition, Plaintiff was asked, "So you'll agree with me then that on June 8th, 2023, Erin, who works in HR at the company, is letting you know basically the company needs to know something by the 15th, either your FMLA paperwork is submitted or you're back to work. Is that how you understood this e-mail?" Plaintiff answered, "That is correct." (Doc. 18-1 at 34).

On June 9, 2023, Plaintiff emailed Defendant complaining of a "musty smell in the Cumming office." (Doc. 16-3 ¶ 14). In response, on June 13, 2023, Defendant told Plaintiff she could work in the Gainesville office "until we get the Cumming office smell checked out." (Docs. 21-2 ¶ 19, 18-2 at 43). Defendant asserts this was an attempt to accommodate. (Doc. 21-2 ¶ 19).

Plaintiff did not return to work on June 16, 2023. (Doc. 16-3 ¶ 20). Nor did she submit completed FMLA paperwork to Defendant on or before June 16, 2023. (*Id.* ¶ 21). On June 15, 2023, Plaintiff was still extremely sick, struggling to breathe, and emailed Defendant that she would need to remain on leave until June 22, when she would see a new pulmonologist who would complete her FMLA paperwork. (Doc. 21-1 ¶¶ 30-31). On June 16, 2023, Defendant terminated Plaintiff's employment. (*Id.* ¶ 22). Plaintiff never completed the FMLA certification. (*Id.* ¶ 27).

## IV.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Jiudicy moves for summary judgment on each of Plaintiff's claims. (Doc. 16-1). Defendant makes five arguments for summary judgment. The Court addresses each in turn.

### A.    Liability for Alleged Failure to Accommodate

"To state a *prima facie* claim for failure to accommodate, the plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010).[4] "The plaintiff bears the burden of identifying an

---

[4] Defendant proposes the use of a failure to accommodate test previously used in this Circuit. (Doc. 16-1 at 7). "To establish a claim of failure to reasonably accommodate a disability, a plaintiff must prove: (1) she has

accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Id.* (quoting *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001)).

### 1.    Disability Status

The Americans with Disability Act defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)[5]" 42 U.S.C. § 12102(1). Plaintiff contends she has a physical impairment that substantially limits one or more major life activities. She "suffers from a number of chronic medical conditions: psoriatic arthritis, ankylosing spondylitis, Raynaud's disease, diabetes, and fibromyalgia, and she is HLA B27 positive." (Doc. 21 at 7) (citing Doc. 18-1 at 16:12-17:21). Defendant contests Plaintiff's status as a disabled individual and argues "Plaintiff's testimony—without corroborating medical evidence—is insufficient to create a genuine dispute of fact as to whether Plaintiff had a disability within the meaning of the ADA." (Doc. 24 at 2). Defendant cites to *Sugg v. City of Sunrise*, where the Eleventh Circuit stated, "[w]e have not explicitly held that a plaintiff's testimony is sufficient to establish the existence of a disability under the ADA." No. 20-13884, 2022 WL 4296992, at *8 (11th Cir. 2022). Defendant declined to quote the next line from that opinion: "As the regulations accompanying the ADA do not require medical evidence to establish disability, we conclude that a plaintiff's own testimony is sufficient where it would allow a jury to reasonably determine that the plaintiff was disabled under the ADA." *Id.* Therefore, it matters little that Plaintiff does not have supporting medical evidence to assert the existence of her chronic medical conditions. If a jury could reasonably determine Plaintiff was disabled under the ADA, her claim may survive summary judgment.

---

a disability within the meaning of the statute; (2) defendant had notice of her disability; (3) with a reasonable accommodation she could perform the essential functions of her position; and (3) [sic] the defendant refused to make such accommodations." *Darwin v. Principi*, No. 604-CV-347-ORL-31DAB, 2006 WL 5079473, at *13 (M.D. Fla. June 15, 2006); *Richardson v. Honda Mfg. of Alabama, LLC*, 635 F. Supp. 2d 1261, 1279 (N.D. Ala. 2009). However, in 2010, the Eleventh Circuit clearly laid out the test in *McKane v. UBS Fin. Servs., Inc.*

[5] Paragraph (3) reads "(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."

The Eleventh Circuit "requires that a plaintiff's evidence of disability include the timing, frequency, and duration of his impairments to survive summary judgment." *Id.* (citing *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1273–74 (11th Cir. 2020)). In that case, a plaintiff's failure to state the timing, frequency, and duration of her impairments prevented the court from "assess[ing] whether her impairments substantially limited her ability to work or sleep as compared to most people in the general population." *Munoz* 981 F.3d at 1273.

Plaintiff has both asserted the timing, frequency, and duration of her impairments and given the Court sufficient evidence to create a genuine issue of material fact regarding whether her impairments substantially limited her ability to work as compared to most people in the general population. Plaintiff notes that her medical conditions are "chronic." (Doc. 21 at 7). For discussion and context, the Court notes that the Center for Disease Control defines chronic diseases as "conditions that last 1 year or more and require ongoing medical attention or limit activities of daily living or both." *About Chronic Diseases*, https://www.cdc.gov/chronic-disease/about/index.html. By asserting her medical conditions are chronic, Plaintiff is describing the duration of her impairments. Because chronic conditions do not go away soon, or at all, Plaintiff is also identifying the frequency of her impairments. As for timing, Plaintiff asserted that the breathing troubles which caused the extended absences at issue in this case began when she went into the Cumming office. (Doc. 18-1 at 39). Plaintiff stated that at one point she was "gasping for air and [] coughing and [] could not breathe." (*Id.* at 64). The information Plaintiff provided allows the Court to assess her ability to work as compared to most people in the general population. Most people can breathe easily, without issue and without "breathing treatments" or a "rescue inhaler." (*Id.* at 39). Therefore, a reasonable jury could find based on Plaintiff's testimony from her deposition and assertions in her filings to find that she is disabled under the ADA.

### 2. Qualified Individual

The Eleventh Circuit tells us that "[a] qualified individual with a disability is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds.'" *McKane* 363 F. App'x at 681 (quoting 42 U.S.C. § 12111(8)). The plaintiff "must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can

7

perform the essential functions of his job with a reasonable accommodation." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir.2000). "'Thus, if [the plaintiff] is unable to perform an essential function of his . . . job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA.'" *McKane* 363 F. App'x at 681 (quoting *Id.*).

Plaintiff asserts that the reasonable accommodation she requested was leave to complete the FMLA certification. (Doc. 21 at 9). Plaintiff had been absent from work for fourteen days when she contacted Defendant to begin the FMLA paperwork. (Doc. 16-3 ¶ 7). Sixteen days after that, Defendant contacted Plaintiff to ask the status of the FMLA certification. (Doc. 18-2 at 45). Seven days later, Plaintiff requested at least an additional seven days of leave to complete her FMLA certification. (Doc. 21-1 ¶ 31). Plaintiff asserts a seventh week of leave was necessary for her to "seek medical treatment" and "provide a doctor's certification." (Doc. 1 ¶¶ 34-36; Doc. 21 at 10). To be a qualified individual under the ADA, the accommodation must enable Plaintiff to perform an essential function of her job. But completing FMLA paperwork is not an essential function of her job. Completing FMLA paperwork is an internal, ministerial task which allows Plaintiff to take leave, which is not her job. Therefore, the leave, if requested purely to complete FMLA paperwork, would render Plaintiff an unqualified individual under the FMLA. However, because Plaintiff asserted she needed time to seek medical treatment, she may be qualified.

If Plaintiff received the accommodation of leave for purposes of meeting with a doctor and treating her illness, then she would be able to perform all essential functions of her job. Defendant notes that "one who does not come to work cannot perform any of his job functions, essential or otherwise." (Doc. 16-1 at 11 (quoting *Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994)). But if Plaintiff's leave enabled her to heal and return to work without continued need for leave, it would in fact enable her to perform the essential functions of her job. Therefore, the Court finds Plaintiff to be a qualified individual under the ADA under Plaintiff's theory that the leave enabled her to seek medical treatment, heal or manage her illness, and return to work.

### 3.    Reasonable Accommodation

The third prong of the failure to accommodate test requires that a plaintiff have been discriminated against and the requested accommodation be reasonable. The Court need not reach the issue of discrimination because Plaintiff's requested accommodation was unreasonable. "The Eleventh Circuit has recognized that a short term leave of absence may constitute a reasonable accommodation." *Medearis v. CVS Pharmacy*, 92 F. Supp. 3d 1294, 1309 (N.D. Ga. 2015), *aff'd sub nom. Medearis v. CVS Pharmacy, Inc.*, 646 F. App'x 891 (11th Cir. 2016) (citing *Moore v. Accenture, LLP*, 2007 WL 3313152, at *3–4 (11th Cir. November 9, 2007). However, the leave in that case was FMLA leave, for which Plaintiff here never completed the certification. *Id.*

Whether leave is reasonable in the Eleventh Circuit turns on whether the requested leave was indefinite. In *Wood v. Green*, the Eleventh Circuit held that an indefinite leave of absence is not a reasonable accommodation. 323 F.3d 1309, 1312 (11th Cir. 2003). The Eleventh Circuit in *Duckett v. Dunlop Tire Corp.* noted that "[p]laintiff could not represent that he likely would have been able to work within a month or two . . . and had no way of knowing when his doctor would allow him to return to work." 120 F.3d 1222, 1226 (11th Cir. 1997). A Plaintiff need not specifically ask for indefinite leave to trigger the limitations of *Wood*. Courts may conclude that a "requested accommodation [is] not reasonable because [Plaintiff is] essentially requesting indefinite leave." *Billups v. Emerald Coast Utilities Auth.*, 714 F. App'x 929, 935 (11th Cir. 2017) (discussing *Wood v. Green* 323 F.3d 1309, 1313 (11th Cir. 2003)).

Here, Plaintiff asserts that she requested "just one additional week." (Doc. 1 at 5). But Plaintiff's request of one additional week[6] did not come in a vacuum. By the time she requested one additional week, Plaintiff had already tendered doctor's excuses and a work release for four successive, different periods of time. (Doc. 16-3 ¶ 4). Each period was a definite period of time: Plaintiff had an excuse for being absent starting on one date and ending on another. And Plaintiff provided an excuse for the final date range, June 15 to 22, during which she was fired. *Id.* Each request for leave was definite. But it is her repeated engagement in this course of conduct which makes her requested leave indefinite as a matter of law. Indeed, while

---

[6] Defendant does not dispute that Plaintiff requested an additional week. (Doc. 16-1 at 12).

Plaintiff asserts the second pulmonologist would have helped treat her, she provides no reason for why the first pulmonologist did not suffice. If the Court had to view each request for a short leave of absence with definite start and end dates in a vacuum, employees would be able to continually request short, definite leaves of absence ad infinitum. To do so would undermine the Eleventh Circuit's holding in *Wood* and constitute an end-run around this Circuit's precedent. Therefore, in context, Plaintiff's request for "one additional week," taken with her previous excuses, constitutes a request for indefinite leave. Because indefinite leaves of absence are not reasonable accommodations, Plaintiff cannot successfully make out a Failure to Accommodate claim and that results in there being no genuine dispute of material fact as to Plaintiff's contention regarding reasonable accommodation. Therefore, Defendant's Motion (Doc. 16) is **GRANTED** as to Count I of Plaintiff's Complaint (Doc. 1).

### B. Liability for ADA Discrimination

The Eleventh Circuit requires courts to resolve claims of disability discrimination under the ADA using the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). Under this framework, a plaintiff has the burden of proving a prima facie case of discrimination. If the plaintiff proves a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action taken against the employee. If the defendant carries this burden, the plaintiff must prove the legitimate reason offered by the defendant was pretext for discrimination. *Id.* at 1824-25.

"[T]o establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate 'that (1) he has a disability, (2) he is a 'qualified individual,' which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability.'" *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir. 2005) (quoting *Reed v. The Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000)). As established in Section A, Plaintiff has a disability and is a qualified individual. However, "when an employer has offered a legitimate, nondiscriminatory reason for an [alleged adverse employment action], whether a plaintiff made out a prima facie case is almost always irrelevant in considering a motion for summary judgment." *Smith v. Fed. Express Corp.*, 191 F. App'x 852,

10

856 (11th Cir. 2006). The Court need not decide whether Plaintiff has made out a prima facie case, because Defendant has offered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

Defendant stated in the termination letter to Plaintiff that she was fired "due to the length of time of your absence." (Doc. 18-2 at 47). An employee's "presence on a routine basis is . . . an essential element of the job." *Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir. 1994). An employer may fire a qualified employee because she misses work and does not complete the required paperwork for extended leave. *See Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000). Plaintiff failed to do an essential part of her job. An employer's decision to terminate an employee for failing to come to work is a legitimate reason. Therefore, Plaintiff must show the stated reason is a mere pretext for unlawful discrimination to prevail. Plaintiff has failed to do so.

 "A reason is not pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." *Young v. FedEx Exp.*, 432 F. App'x 915, 917 (11th Cir. 2011) (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515 (1993)). "Ultimately, an employee must meet the employer's stated reason 'head on and rebut it, and [he] cannot succeed by simply quarreling with the wisdom of that reason.'" *Id.* (quoting *Alvarez,* 610 F.3d at 1266). "A plaintiff can do so directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id.*

Plaintiff's arguments here regarding pretext are that "[she] was disabled and was qualified for her position" and that she would have "at most" taken "the remaining six weeks of FMLA leave to which she was entitled." (Doc. 21 at 13). As the Court will discuss later, Plaintiff was not entitled to FMLA leave because she never completed the certification process. Therefore, Plaintiff complains that she was fired despite being qualified and taking no more leave than the amount of which she might have been legally entitled. Such arguments largely quarrel with the wisdom of Defendant's decision to terminate her. An employer is allowed to "tire[] of waiting for Ms. Gossett's return and decide[] that she would never return

11

to work or provide documentation." (Doc. 21 at 10). If anything, Plaintiff's arguments emphasize the consistency and plausibility of Defendant's termination decision. Plaintiff has not carried her burden of poking holes in Defendant's stated reason such that this Court could find it unworthy of credence. No genuine dispute of material fact remains as to whether Plaintiff provides an ample response to Defendant's stated reason for Plaintiff's termination. Therefore, Plaintiff's discrimination claim fails. Defendant's Motion (Doc. 16) is **GRANTED** as to Count II of Plaintiff's Complaint (Doc. 1).

### C. Liability for ADA Retaliation

In the Eleventh Circuit, "to successfully allege a prima facie retaliation claim under . . . the ADA, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). "The failure to satisfy any of these elements is fatal to a complaint of retaliation." *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004).

Defendant only contests the first and third elements of a retaliation claim. Defendant argues regarding the first element, that Plaintiff "cannot establish that she made a request for an accommodation or that her allegedly requested accommodation was reasonable." (Doc. 16-1 at 15). Regarding the third element, Defendant argues "Plaintiff cannot prove any causal link between her termination and any request for accommodation." (*Id.* at 16).

"To establish the first element, 'it is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the [ADA].'" *Belgrave v. Publix Super Mkt., Inc.*, No. 22-13021, 2023 WL 3477790, at *4 (11th Cir. May 16, 2023), *cert. denied*, 144 S. Ct. 510, 217 L. Ed. 2d 267 (2023) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006). "An employee participates in a protected activity when he makes 'a request for a reasonable accommodation.'" *Id.* (quoting *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016)). For the reasons stated above, Plaintiff's requested accommodation was unreasonable as a matter of law. Despite this, Plaintiff maintains that "her request for additional leave was a request for reasonable accommodation." (Doc. 21 at 14, *see generally* Doc. 1). And Plaintiff asserts that "just one additional week" would have been enough for her second pulmonologist to complete

the FMLA paperwork and for her to get better. (Doc. 1 at 5). Plaintiff had a good faith belief that her activity was protected by the ADA. And Plaintiff's belief was objectively reasonable as a matter of law. Leave is often a reasonable accommodation under the ADA. It is when the requested leave is indefinite that the Eleventh Circuit finds it an unreasonable accommodation. *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003). The Court earlier deliberated on the nature of Plaintiff's request for leave at length. The issue was complex, requiring briefing from both Parties. Plaintiff, as a layperson, cannot be expected to know her leave request was unreasonable. Therefore, Plaintiff had a good faith, objectively reasonable belief her activity was protected by the ADA.

Parties do not dispute the second element. "As a general rule, '[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the . . . action in question as adverse.'" *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1181 (11th Cir. 2003) (quoting *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir.1998)). "[A]n employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id.* (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)). Plaintiff was fired. A reasonable person would view employment termination as adverse. Losing one's job is a serious and material change in the terms, conditions, and privileges of employment. The second element is therefore satisfied.

The Eleventh Circuit tells us to "construe the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated.'" *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir.1998)). "'A plaintiff satisfies this element if [s]he provides sufficient evidence' of knowledge of the protected expression and 'that there was a close temporal proximity between this awareness and the adverse . . . action.'" *Id.* (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003) (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999))). In *Higdon*, the Eleventh Circuit held that close temporal proximity between protected expression and an adverse action is "sufficient circumstantial evidence of a causal connection for the purposes of a prima facie case." *Id.* Plaintiff was fired one day after she requested an additional week to complete her FMLA certification. (Doc. 21-1 ¶¶ 31, 22). The Eleventh Circuit in *Higdon* contemplated that a three-

13

to-four-month delay between the protected activity and adverse action would be "insufficient to show causal connection." *Higdon* 393 F.3d at 1220 (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268 (2001)). One day is an extremely small amount of time. Because the Eleventh Circuit requires simply a close temporal proximity between an employer's awareness of the protected expression and the adverse action, Plaintiff satisfies the third element.

Having satisfied all three elements to make out an ADA retaliation claim, Defendant's Motion (Doc. 16) is **DENIED** as to Count III of Plaintiff's Complaint (Doc. 1).

### D. FMLA Interference Claim

"An interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). The second element is easily resolved. The Eleventh Circuit tells us that an employer "clearly denied" a plaintiff FMLA benefits when it "fired her." *Id.* Here, too, the employer fired Plaintiff, meaning it clearly denied her FMLA benefits. The Court will discuss the first element below.

To be entitled to FMLA leave, an employee "would need to state a qualifying reason for the needed leave and otherwise satisfy the notice requirements set forth in § 825.302 or § 825.303 depending on whether the need for leave is foreseeable or unforeseeable." 29 C.F.R. § 825.301(b). "An employee giving notice of the need for FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied." *Id.* The Parties do not mention any of these elements in the briefing on the instant Motion. Nonetheless, Plaintiff gave notice of the need for FMLA leave on May 23, when she emailed Defendant requesting the paperwork for FMLA. (Doc. 18-2 at 36). She did not state a qualifying reason for the needed leave in this email. Nor could Defendant determine whether the leave qualifies under the FMLA using that email. If the Court treated the May 23 email as Plaintiff's notice of need for FMLA leave, she would not be entitled to FMLA leave and therefore unable to sustain a claim for interference.

However, Plaintiff states in her Complaint that "[o]n May 8, 2023, Ms. Gossett called in to her manager, Sareatha Jiminez and the District Manager Scott Henson informing them of her illness and that she would not be able to come to work." (Doc. 1 at 3). This notice may

14

suffice because "[a]n employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice." 29 C.F.R. § 825.301(b). Plaintiff benefits here from the summary judgment standard. The Court must view all factual inferences in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587–88; *Allen,* 121 F.3d at 646. Plaintiff does not assert with specificity whether she sufficiently explained the reasons for the needed leave. She simply says that she informed Defendant of her "illness." The Court can, and indeed must, infer that Plaintiff actually described her illness with a modicum of specificity sufficient for her employer to determine whether the leave qualifies under the FMLA. Therefore, for summary judgment purposes, the Court finds that Plaintiff stated a qualifying reason for the needed leave, i.e., a genuine issue of material fact remains.

Plaintiff's leave was unforeseeable and she satisfied the requirements for unforeseeable FMLA leave. Neither Party takes a stance on the foreseeability of Plaintiff's leave. However, addressing the requirements for unforeseeable leave is a necessary predicate to the Court's analysis. So the Court addresses the issue. There is no evidence in the record to support a finding of foreseeability. Under the FMLA, "leave is foreseeable based on an expected birth, placement for adoption or foster care, planned medical treatment for a serious health condition of the employee or of a family member, or the planned medical treatment for a serious injury or illness of a covered servicemember." 29 C.F.R. § 825.302(a). Plaintiff's illness falls into none of these categories. Her illness came on suddenly and unexpectedly. Plaintiff is bound by the notice requirements for unforeseeable FMLA leave. "When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable." 29 C.F.R. § 825.303. Plaintiff called in on the same day that she took leave. (Doc. 1 at 3).[7] Plaintiff therefore provided notice to her employer as soon as practicable. Under an argument that Plaintiff provided notice on May 8, 2023, the Court has sufficient facts to infer that her notice was statutorily sufficient.

---

[7] The Parties seem to dispute Plaintiff's last day of work. Defendant says it was May 4, 2023 (Doc. 16-3 ¶ 3). Plaintiff says it was May 5, 2023. (Doc. 21-2 ¶ 3). Either way, Plaintiff likely called in as soon as practicable, given the sudden onset of illness and the minimal number of days between onset and her call to work.

An employee's entitlement to FMLA leave depends upon one more requirement, about which both Parties heavily emphasize in their filings: "An employer may require that an employee's leave . . . be supported by a certification issued by the health care provider of the employee." 29 C.F.R. § 825.305. "The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances." 29 C.F.R. § 825.305. The FMLA paperwork allows the employer to set a deadline for the return of the medical certification but that employers "[m]ust allow at least 15 calendar days from the date requested." (Doc. 18-4 at 25). As it stands, Plaintiff provided notice on May 8, 2023. (Doc. 1 at 3). On May 23, 2023, Plaintiff requested the FMLA paperwork from her employer, which supplied her the paperwork on the same day. (Doc. 18-2 at 35–36). Defendant terminated Plaintiff's employment on June 16, 2023. (Doc. 16-3 ¶ 22). Plaintiff never completed the FMLA certification before or after termination. (Doc. 21-1 ¶ 27).

As noted above, Defendant did not specify a date by which it wanted the paperwork back. And Defendant notes in its Motion that it allowed Plaintiff "twenty-four (24) days to complete her FMLA paperwork." (Doc. 16-1 at 18). Indeed, Defendant's HR Manager Ms. Giudicy testified in her deposition that the deadline is "case-by-case and we are flexible." (Doc. 18-3 at 16-19). So, Defendant never set a clear initial deadline because it did not specify a return date on the paperwork provided to Plaintiff. And Defendant states in the instant Motion that it granted Plaintiff an extension to complete her FMLA paperwork. (Doc. 16-1 at 17). Defendant argues that it granted an extension with a final certification deadline of June 16, 2023. *Id.* Plaintiff argues the email granting an extension was "vague." (Doc. 21). The email read:

> I know you are scheduled to come back to work on June 15th ,2023 [sic] and we would like to have you back, but if you cannot return and without the FMLA paperwork, we cannot continue to hold your position..[sic] Business continues and we need to have a full staff in all our locations to keep things moving smoothly. This is not to say that once you have fully recovered , [sic] we would welcome you back.

(Doc. 18-2 at 44). Without finding, and for the purpose of discussing vagueness, the Court notes that at first blush, the email is clear: we cannot hold your position without your return

16

or the FMLA paperwork. But the email continues "[t]his is not to say that once you have fully recovered , [sic] we would welcome you back." This phrase makes the sentence unclear. On a purely textual read, the sentence says that once Plaintiff recovered she would not be welcomed back. But why would Defendant make such a statement? It was already clear that Plaintiff had three options: return the paperwork on time, return to work on time, or be fired. The sentence begins like a common kind gesture from an employer: you are welcome back once you have recovered. This read is more linguistically sensible: an employer delivers tough news but lightens the blow by assuring the employee she can return once recovered. An alternative read is that the Defendant was adding insult to injury: after your termination, we do not care if you recover, you will not be welcome here again.

The Court need not find the correct meaning of the sentence because the deadline was clear under both readings, even viewing the facts in the light most favorable to the Plaintiff. Under one reading, Plaintiff is fired because her position cannot be held without her presence or the FMLA paperwork. But she can return in a new capacity once fully recovered. Under this reading, the Defendant expressly acknowledges that termination will happen without Plaintiff's return or the completed paperwork but adds that it will gladly *re-hire* her once recovered. Under the alternate reading, Plaintiff is not welcome back should she fail to return or complete the paperwork on time. Either way, Plaintiff will be terminated if she fails to meet the deadline. Plaintiff failed to meet the deadline provided after Defendant gave her an extension. No genuine issue of material fact remains as to whether under the circumstances Plaintiff was entitled to FMLA leave. Plaintiff was not entitled to FMLA leave and cannot sustain an interference claim. Defendant's Motion (Doc. 16) is **GRANTED** as to Count IV of Plaintiff's Complaint (Doc. 1).

### E. Liability for FMLA Retaliation

"To state a claim for retaliation, an employee must allege sufficient facts to plausibly suggest that: '(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) that the decision was causally related to the protected activity.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015) (quoting *Strickland v. Water Works and Sewer Bd. of Birmingham,* 239 F.3d 1199, 1207 (11th Cir.2001)). This test is identical to the test for ADA retaliation. This is because in FMLA cases, as in ADA cases, the

17

Eleventh Circuit "appl[ies] the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (citing 411 U.S. 792 (1973)). District courts have followed suit by analyzing ADA and FMLA retaliation claims under the same standard. *Hill v. Branch Banking & Tr. Co.*, 264 F. Supp. 3d 1247, 1265 (N.D. Ala. 2017) ("Retaliation claims are cognizable under both the ADA and the FMLA, and are analyzed under the same standard.") (citing *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007)). Because Plaintiff alleges retaliation claims arising under the ADA and the FMLA under the same set of facts, the Court's earlier discussion of prongs two and three apply with equal force to this claim. Therefore, Plaintiff satisfies prongs two and three. Because the statutorily protected activity is the only fact that changes, the Court will discuss it below.

Plaintiff engaged in a statutorily protected activity by requesting FMLA leave and attempting to begin the paperwork necessary to certify such leave. Defendant disputes that Plaintiff engaged in a statutorily protected activity, citing to a district court case which said that where an employee fails to "provide certification for her absences . . . she [does] not avail herself of the protections of the FMLA." *Baldwin-Love v. Elec. Data Sys. Corp.*, 307 F. Supp. 2d 1222, 1235 (M.D. Ala. 2004). This case is distinguishable for one reason and irrelevant for another. First, the facts of *Baldwin-Love* do not indicate that the plaintiff's termination resulted from her requesting FMLA leave. In that case, she took leave and was sent FMLA paperwork by a contractor employed by her employer. *Id.* at 1226. The plaintiff in *Baldwin-Love* did not invoke the FMLA when she took her leave, nor did she take steps toward completing FMLA certification. *Id.* Here, Plaintiff affirmatively invoked the FMLA when she requested that Defendant provide her with FMLA paperwork. (Doc. 16-3 ¶ 7). Therefore, *Baldwin-Love* is distinguishable.

Furthermore, the Eleventh Circuit has provided guidance in the intervening years since that case. The Eleventh Circuit tells us that "[t]he FMLA protects an employee who gives '[n]otice of an intent to use FMLA leave in the future.'" *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1276 (11th Cir. 2020) (quoting *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1274–75 (11th Cir. 2012)). And "[u]nder the FMLA an employee need not be currently exercising her rights or currently eligible for FMLA leave in order to be protected from

18

retaliation. *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1276 (11th Cir. 2012). For the instant analysis, it does not matter that Plaintiff never obtained the FMLA certification. She informed her employer that she wanted to take FMLA leave and requested the necessary paperwork. That act is a statutorily protected activity. Plaintiff satisfies the first prong of this standard, along with the second and third as discussed in Section C above. Therefore, Defendant's Motion (Doc. 16) is **DENIED** as to Count V of Plaintiff's Complaint (Doc. 1).

## V.    CONCLUSION

First, Plaintiff's Failure to Accommodate claim fails because her requested accommodation was unreasonable as a matter of law. Second, Plaintiff's ADA Discrimination claim fails because Defendant supplied a legitimate, nondiscriminatory reason for Plaintiff's termination, which Plaintiff failed to sufficiently rebut. Third, Plaintiff's ADA Retaliation claim remains because she has demonstrated, for the purposes of summary judgment, sufficient evidence that she engaged in statutorily protected expression, suffered an adverse employment action, and the adverse action was causally related to the protected expression to create genuine issues of material fact. Fourth, Plaintiff's FMLA Interference claim fails because she was not entitled to a benefit under the FMLA because she failed to complete the required certification on time. Fifth, because claims for FMLA Retaliation are analyzed under the same standard as ADA Retaliation and Plaintiff succeeded on the claim for ADA Retaliation, her FMLA Retaliation claim survives. The Court **DENIES** the request for oral argument, as the briefing was adequate for the Court's review and consideration. Defendant's Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**. Defendant's Motion is **GRANTED** as to Plaintiff's Claims One, Two, and Four and **DENIED** as to Claims Three and Five. Plaintiff's claims of ADA retaliation and FMLA retaliation remain pending against Defendant.

**SO ORDERED**, this 6th day of February 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**